Filed 7/8/26  P. v. Gordon CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B338942 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. YA095166-01, 02) |
| v. | |
| CLIVE GORDON et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Kelly M. Kelley, Judge.  Reversed with directions as to both appellants.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant Clive Gordon.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant Carlos Acosta.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

Appellants Carlos Acosta and Clive Gordon were resentenced after their sentences were vacated on direct appeal of their judgments of conviction. Both allege the trial court abused its discretion in reimposing the full 10 years for a firearm enhancement found true by their jury. Gordon separately challenges the trial court's finding that he maintained a leadership role in the offense and his prior adjudications had increased in number and seriousness. We reverse as to both appellants.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken from the trial record and our prior opinion on direct appeal. On September 13, 2016, robbery victims Joe Walker, Mercure Washington, and Ronald Taylor were looking at Taylor's new Mercedes convertible parked on the street in front of Walker's house in Los Angeles. Taylor was in the driver's seat with the engine running. When he got out of the car to join Walker and Washington at the trunk of the car, he left the engine running and the fob for the keyless ignition in the cup holder. The car has an "ecosystem" which automatically turns the car off when it is stopped or when the driver leaves the vehicle. The car "sometimes . . . will just turn itself back on."

As they were standing at the back of the car, another trio of men, about a block away, got out of their car, a Lincoln, and started walking towards the Mercedes. Appellants Gordon and Acosta were part of the trio walking towards the Mercedes. Gordon approached first. Acosta and the third man were standing six feet back by the sidewalk. Gordon said, "Nice car." Taylor thanked him for the comment. Gordon then asked Taylor, "How much was the car?" Walker jokingly answered, "A hundred thousand dollars." At that point Gordon said, "Empty your

2

pockets then." Taylor looked up and saw Gordon holding a black semiautomatic handgun. Acosta was pointing a silver semiautomatic handgun at the three victims. Taylor gave $140-$160 in cash to Acosta; Washington had no cash on him; Walker quickly walked to his house without acquiescing.

All of a sudden, the Mercedes, which was off, turned itself on. Gordon told Acosta, "Get his chain," referring to a chain against Washington's neck. Gordon and the third man jumped into the Mercedes. Acosta ran past the robbery victims and either got into the Lincoln down the street or hopped into the Mercedes. The robbery victims flagged down a police car and called 911. Gordon, Acosta and the third man were later arrested. (*People v. Gordon* (Mar. 9, 2022, B286809) [non pub. opn.].)[1]

In 2017, a jury convicted both appellants of carjacking (count 1), second degree robbery (count 2) and two counts of attempted robbery (counts 3 and 4). The jury found true that each defendant personally used a firearm within the meaning of Penal Code[2] section 12022.53, subdivision (b), and that all counts were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C). The court sentenced Acosta to a term of 25 years to life on the carjacking count and a determinate term of 37 years and eight months on the robbery and attempted robbery counts, including three years and four months for the gang enhancement.

---

[1] On our own motion, we take judicial notice of the appellate record in *People v. Gordon, supra,* B286809.

[2] Statutory references are to the Penal Code

3

The court sentenced Gordon to a term of 25 years to life on the carjacking count and a determinate term of 36 years and four months on the remaining counts, including three years and four months for the gang enhancement.

On August 13, 2019, we affirmed the judgments of conviction with minor sentencing corrections and modifications. (*People v. Gordon* (Aug. 13, 2019, B286809) [nonpub. opn].) Both defendants filed petitions for review with the California Supreme Court, which were granted and held on November 26, 2019.

On August 25, 2021, the Supreme Court directed us to vacate our decision and reconsider the cause in light of its decision in *People v. Lemcke* (2021) 11 Cal.5th 644. While both appellants' cases were pending on remand, Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) went into effect January 1, 2022. We granted appellants' request to brief the impact of Assembly Bill 333 on the section 186.22 gang allegations. On March 9, 2022, we reversed the true findings on the section 186.22 gang allegations and remanded both cases for new trials as to those allegations. (*People v. Gordon, supra,* B286809.)

The hearing on remand did not occur until May 16, 2024. On June 2, 2022, however, the People announced they were unable to proceed on the gang allegations. The trial court granted appellants' motion to dismiss those allegations and set the matter for resentencing. By then several new ameliorative sentencing statutes had been enacted into law. On remand, the People and Acosta filed sentencing memoranda. Specifically, among other things, Acosta asked the court to exercise its discretion to dismiss the firearm allegations. Acosta argued: "The court can now exercise its discretion to [s]trike or reduce the

firearm enhancement, or even to apply the enhancement to only a portion of the uncharged crimes. Prior to January 1, 2018, the court had no discretion to strike or reduce the firearm enhancement in any way. *People v. Tirado* (2022) 12 Cal.5th 688, addresses the ability of the Court to reduce the enhancement." Acosta also presented letters and favorable prison evaluations in mitigation of punishment. Gordon made a similar argument.

The resentencing hearing went forward on May 16, 2024. As to both defendants, the court declined to strike the firearm enhancements, stating, "In terms of resentencing, the court is required to take into account changes in the law since the time of the original sentencing and [defendants] are entitled to any benefits based on those changes in the law. [¶] One of those changes was pursuant to Penal Code section 12022.53(h) which allows the court the discretion to strike the gun allegation that was found true by the jury. Although Penal Code section 12022.53(h) was not the status of the law on the date of sentencing which was December 5th, 2017, it appears that Judge Brandlin contemplated that forthcoming change in the law when he was sentencing the defendants. He indicated, quote, 'Motion to strike the allegation pursuant to Penal Code section 1385 is denied. The court finds it is not appropriate based on the circumstances of this case now or in the future,' unquote. [¶] The court joins in Judge Brandlin's assessment and has specifically considered the court's discretion but is exercising my discretion not to dismiss the gun allegation pursuant to Penal Code section 12022.53(h). [¶] The court further considered the change in law pursuant to Penal Code section 1385(c). [¶] With regard to Penal Code section 1385(c) the court finds that it is not in furtherance of justice to strike the gun enhancement in this case. The court

5

finds that striking the firearm enhancement in this matter would endanger public safety as contemplated in Penal Code section 1385(c)(2)."

Notably the court did not address the issue of whether reducing (as opposed to striking) the enhancement terms was appropriate.

The trial court resentenced Acosta to 21 years in state prison. The sentence included a three-year low term for carjacking plus 10 years for the firearm enhancement. On the remaining counts, the court imposed an aggregate consecutive term of eight years, consisting of four years four months concurrent on count 2; four years consecutive on count 3; and four years consecutive on count 4. The court awarded additional sentencing credit and ordered the Department of Corrections and Rehabilitation to calculate his conduct credit. Acosta timely appealed.

The trial court resentenced Gordon to 23 years eight months in state prison. It imposed the upper term of nine years plus 10 years for the firearm enhancement on the carjacking count. On the other three counts, the court imposed an aggregate consecutive term of four years eight months, consisting of four years four months concurrent on count 2; eight months consecutive on count 3; and four years consecutive on count 4. It awarded additional sentencing credit and directed the Department of Corrections and Rehabilitation to calculate his conduct credit. Gordon timely appealed.

## DISCUSSION

Acosta raises one issue. He contends that in exercising its discretion not to dismiss the firearm pursuant to section 12022.53, the trial court did not appear to understand it had

6

discretion to impose lesser uncharged enhancements under section 12022.5.

Gordon raises the same issue and another. He separately contends that the trial court erred in imposing the upper term sentence for carjacking based upon his prior juvenile adjudications, the increasing seriousness and number of his prior adjudications, and his "leadership role" in committing the offenses, disputed factors he did not stipulate to and which were not found true by a jury or by a court after a jury trial waiver.

I. *Firearm Enhancement: Applicable Law and Standard of Review*

Section 12022.5, subdivision (a) provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." (§ 12022.5, subd. (a).) Section 12022.53, created a "tiered system of sentencing enhancements for specified felonies involving firearms." (*People v. Tirado*, *supra*, 12 Cal.5th at p. 692 (*Tirado*).) Section 12022.53, subdivision (b) mandates imposition of a 10-year enhancement for personal use of a firearm in the commission of the specific felonies of which Acosta was convicted. (See § 12022.53, subd. (b).)

Until January 1, 2018, section 12022.53, former subdivision (h) provided: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." (§ 12022.53, former subd. (h).) Effective January 1, 2018, subdivision (h) was amended to read: "The court may, in the interest of justice pursuant to Section 1385 and at the time of

7

sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." (*Id.*, subd. (h).) The basis for this change was Senate Bill No. 620 (2017–2018 Reg. Sess.). (Stats. 2017, ch. 682, § 2.)

Subsequently, in *Tirado,* the California Supreme Court held that when an accusatory pleading alleges and the jury finds true the facts supporting a greater firearm enhancement, the court may impose a lesser included, uncharged statutory enhancement. (*Tirado*, *supra,* 12 Cal.5th. at pp. 697, 700.) *People v. McDavid* (2024) 15 Cal.5th 1015, extended *Tirado's* reasoning, explicitly holding that a trial court may strike a defendant's enhancement under section 12022.53 and impose a lesser uncharged enhancement authorized elsewhere in the Penal Code, that is, outside of section 12022.53. (*Id.* at p. 1030.) For Acosta, this meant he was eligible to be resentenced under section 12022.5, subdivision (a)'s lower terms of three or four years instead of the 10 years mandated by section 12022.53, subdivision (b).

We consider a trial court's sentencing decisions under an abuse of discretion standard. (*People v. Moseley* (2004) 105 Cal.App.5th 870, 874.) A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard or bases its decision on express or implied factual findings not supported by substantial evidence. (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887.) A ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. (*Tirado,*

*supra*, 12 Cal.5th at p. 694.)  "Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors."  (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.)  A silent record does not demonstrate a lack of awareness of the court's full sentencing discretion.  (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)  Even if the sentencing court was unaware of its discretion, remand is not necessary when the record " 'clearly indicate[s]' " that the trial court would have reached the same conclusion " 'even if it had been aware that it had such discretion.' "  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

### A.    **Acosta: Analysis**

It appears the trial court deferred to the original trial court's statement that it would not "strike" the firearm "now or in the future."  But, at the time the original trial court made that prefatory ruling, it apparently anticipated that the new amendments would be binary: the trial court would be authorized to either strike or not strike enhancements.  *Tirado's* later third option, that is, to reduce or modify the term of the enhancement, did not appear to be within the original trial court's consideration.  Given the resentencing court's remarks that it was inclined to go with the original trial court's ruling, we conclude the resentencing court did not consider the full scope of its new discretion to choose between several alternatives: to strike, not to strike, or to reduce the enhancement from 10 years to three or four years.  (§ 12022.53, subd. (a); *People v. McDavid, supra*, 15 Cal.5th at p. 1030.)

Our conclusion is buttressed by the trial court's reference to section 12022.53, subdivision (h) which by its terms addresses only the trial court's discretion to strike (as opposed to reduce) an

9

enhancement term. We recognize a silent record does not demonstrate a lack of awareness of the court's full sentencing discretion. However, the court's reference to section 12022.53, subdivision (h) leads us to conclude the record is not merely silent. The court's comments indicate to us that the trial court simply was not open to going so far as to *strike* the firearm enhancements altogether. It does not indicate to us that, had it recognized the full scope of its discretion, the trial court would also have been closed to a *reduction* of the 10-year enhancement. (In this regard we also note that *McDavid*, which further extended *Tirado*, was issued just 18 days before the resentencing hearing.)

We cannot say that the record clearly indicates the trial court would have reached the same conclusion if it had been aware of the full scope of its discretion. The trial court adopted and relied upon several mitigating factors when it chose a low term sentence for carjacking, the principal count. The trial court compared both defendants and specifically found Acosta played a smaller part in the offenses (Gordon was the "shot caller"); had no prior criminal record; and hurt no one during the commission of the offenses. We find it significant that despite the court's findings that Acosta played a smaller part in the offenses, Gordon had a long criminal record while Acosta had no record, and Gordon was directing the actions of his cohorts, the ultimate sentences imposed on each defendant differed by only two years. Given the court's embrace of Acosta's mitigating circumstances, finding they outweighed the aggravating circumstances, and had the court known it could also reduce, not just strike, the enhancement terms, we find it reasonably probable the court

10

would have done so.  Having said that, we express no opinion on the trial court's ultimate decision on remand.

B.  **Gordon: Analysis**

We do not arrive at the same conclusion for Gordon.  We are not convinced the record clearly indicates a reasonable probability the trial court would have imposed a lesser sentence on Gordon had it been aware of the full scope of its discretion to reduce, rather than strike, the firearm enhancement terms.  The court determined that Gordon had a more prominent role in the offense, calling him the "shot caller."  It also noted Gordon's more extensive prior criminal record.  The court repeatedly contrasted the two defendants and negatively remarked on Gordon's prior criminal record and his conduct during the commission of the offenses.  Indeed, it is reasonably probable to us, indeed likely, that the trial court would have reached the same conclusion.  We therefore reject Gordon's contention on this issue.

II.  *Use of Prior Juvenile Adjudications Found by the Court to be Numerous and Increasing in Seriousness*

Gordon separately contends that the trial court erred in finding that his prior juvenile adjudications were "numerous and of increasing seriousness" and then using that finding as a basis to impose the upper term of nine years on the carjacking count.  Based on Supreme Court caselaw promulgated after Gordon's sentencing, we agree.

A.  **Applicable Law**

Section 1170, subdivision (b) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order

11

imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."  (§ 1170, subd. (b)(1).)

Section 1170, subdivision (b)(2) in turn provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)

Section 1170 subdivision (b)(3) creates an exception to this evidentiary requirement: "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3); *People v. Lynch* (2024) 16 Cal.5th 730, 748 [aggravating facts that must go to the jury exclude prior convictions proven by a certified record of conviction].)

In sentencing, the trial court must apply the sentencing rules of the Judicial Council.  (§ 1170, subd. (a)(3).)  California Rules of Court,[3] rule 4.421(b)(2) provides as an aggravating circumstance that "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness."  (Rule 4.421(b)(2).)

During the pendency of Gordon's appeal, our Supreme Court decided *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*).  In *Wiley*, the court concluded the trial court violated defendant Wiley's "federal constitutional right to a jury trial by adjudicating

---

[3]     Rule references are to the California Rules of Court.

12

underlying facts related to his prior convictions and improperly relying on its conclusion in choosing to impose an upper term sentence." (*Id.* at p. 1076.)

The facts in *Wiley* materially mirror Gordon's. The trial court sentenced Wiley to an upper term sentence for making criminal threats. "To justify the upper term, the trial court cited Wiley's 'prior convictions, [his] poor performance on probation, and the fact that the charges are becoming more serious.' " (*Wiley, supra*, 17 Cal.5th at p. 1077.) The Court of Appeal affirmed, holding that the trial judge was permitted to make those determinations without a jury determination because they related to Wiley's recidivism. (*Ibid.*)

In reversing the judgment, the court considered *Erlinger v. United States* (2024) 602 U.S. 821, and concluded that the high court's "analysis of the federal Constitution's jury trial right requires that a jury determine whether the particular details of a defendant's criminal history establish an unsatisfactory probation performance or demonstrate convictions of increasing seriousness, before a trial court can rely on those facts to justify an upper term sentence." (*Wiley, supra*, 17 Cal.5th at p. 1078.) In so holding, the *Wiley* court disapproved prior caselaw which permitted trial courts to rely not only on the fact that a defendant had suffered prior convictions, but also on the particular details of recidivism-based aggravating factors. (*Id.* at p. 1086.) "In sum, a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Ibid.*, fn. omitted.)

13

B.    **Standard of Review**

A trial court's sentencing decisions are reviewed for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 371.)

C.    **Analysis of Substantive Error**

In resentencing Gordon, the trial court admitted into evidence as Court's Exhibit 1 Gordon's certified juvenile rap sheet and then considered the progression of his prior juvenile adjudications as aggravating factors for sentencing without submitting the issues to a jury.  The certified rap sheet proved up the following criminal history: 1) sustained petition for graffiti vandalism and minor in possession of spray paint, August 13, 2014; 2) sustained petition for petty theft and resisting a peace officer, July 20, 2016; 3) sustained petition for possessing a concealable firearm and resisting a peace officer, January 1, 2016; 4) sustained petition for robbery, assault, carrying a concealed dirk or dagger, and attempted robbery, October 6, 2014; 5) instant crimes committed on September 13, 2016, while on juvenile probation after release from Camp Community Placement sentence; 6) arrest on October 21, 2016, for carrying a switchblade knife, arraignment pending.

The trial court asked Gordon if he objected to the admission of the certified rap sheet.  Gordon's counsel responded: "No objection."

The trial court found Gordon was the "shot-caller on this particular mission into opposing gang turf," "was a more active participant in the robbery," and "appeared to take a leadership role in this robbery."  Gordon was the only one of the three robbers to speak and told the victims to "empty your pockets." Gordon then instructed Acosta to get Taylor's money and

14

Washington's chain.  The trial court also found that Gordon was in fact on juvenile probation, having just been released from his camp community placement sentence."  The trial court found: "Further, as the court just indicated, Mr. Gordon has a substantial prior criminal record, while Mr. Acosta had no prior criminal record, as demonstrated in what has now been received as Court's Exhibit 1 which is a certified record of conviction. [¶] Mr. [Gordon] sustained a juvenile petition for Penal Code section 594 on April 26th, 2013.  This was for vandalism.  Within two weeks of that first arrest, on May 5th of 2013 Mr. Gordon was arrested for Penal Code section 148(a)(1), resisting, obstructing or delaying a peace officer; that crime is more serious than his first arrest for vandalism.  And then Mr. Gordon subsequently sustained an arrest and sustained juvenile petition for Penal Code section 664-211, attempted robbery, on October 6th of 2014. [¶] He was in fact still on juvenile probation at the time that he picked up this case, having been released from his camp community placement sentence. [¶] The court finds that pursuant to Penal Code section 1170(b)(3), as it relates to Mr. Gordon, although factors in aggravation were not proved and found true beyond a reasonable doubt by a jury, based on the certified record of defendant's prior convictions the court is taking that into account in terms of Mr. Gordon's sentence. [¶] The court finds that based on this certified record of conviction, again marked as Court's Exhibit 1, that the factor in aggravation pursuant to [Rule] 4.421(b)(2) has been proved beyond a reasonable doubt, that being that the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness.  The court finds that based on Mr. Gordon's young age at the time of this crime, that

15

his prior criminal history is substantial, and also that the sustained juvenile petitions are of increasing seriousness leading up to this very serious crime that he committed shortly after becoming an adult. [¶] Based on that factor in aggravation being found true by the court beyond a reasonable doubt, the court's tentative is to impose high-term as to Mr. Gordon for the principal count as discussed with the attorneys just prior to going on the record."

*Wiley*, decided while this appeal was pending, directly controls the outcome of this appeal. We conclude, based on the trial court's comments, that it engaged in factfinding deemed unconstitutional in *Wiley* as to Gordon's leadership role in the offenses, the number of adjudications, and the increasing seriousness of Gordon's prior juvenile adjudications.

Here we pause to note the People contend Gordon forfeited his challenge to the factors in aggravation because he failed to object to the court's admission into evidence of the certified rap sheet and failed to object to the court's reliance upon the juvenile adjudications as aggravating factors warranting a high term. (See *People v. Scott* (1994) 9 Cal.4th 331, 351–354.) We disagree. Although Gordon's counsel told the court he had no objection to the admission of Gordon's juvenile rap sheet, he made absolutely clear in his argument that he was insisting that a jury make any factual determination about those prior adjudications. At resentencing, Gordon's counsel argued that "pursuant to changes in the law requiring that any high-term that is imposed . . . there must be a finding that the aggravating circumstances or factors be found true by a jury or that defendant stipulated to such findings, because . . . a jury did not find those aggravating factors or circumstances and because Mr. Gordon did not stipulate to

16

those aggravating circumstances he is requesting that he be sentenced to the low-term for all four counts." We conclude Gordon did not forfeit his contention that the trial court engaged in and relied on improper factfinding to impose the upper term nine-year sentence.

### D.　**Analysis of Prejudice**

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman*[4] standard of review." (*Wiley, supra*, 17 Cal.5th at p. 1087.) "Under that standard, 'a sentence imposed under . . . section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Ibid.*)

We turn again to our Supreme Court's analysis in *Wiley*. There, as here, a certified rap sheet listing all of Wiley's prior convictions was admitted into evidence. (*Wiley, supra*, 17 Cal.5th at p. 1087.) The People argued the progression of Wiley's offenses over time from misdemeanors to felonies demonstrated a clear trend from less serious offenses towards more serious ones. Acknowledging that could be the case, the court otherwise noted that "a rational juror may not have been persuaded beyond a reasonable doubt by that fact alone. Given that Wiley's criminal record began as a young adult and spanned two decades, we

---

4　　*Chapman v. California* (1967) 386 U.S. 18.

17

cannot discount the possibility that, in making the determination as to increasing seriousness, a rational juror could have either placed greater emphasis on his felony offenses, or on his more recent criminal history." (*Id.* at p. 1089.)

Here, Gordon's juvenile adjudications included graffiti, minor in possession of spray paint, vandalism, petty theft, resisting a peace officer, possession of a concealed weapon, and attempted robbery. Perhaps that evidence may have been sufficient to support a finding of increasing seriousness. But *Wiley* tells us "that is not the proper inquiry when assessing prejudice under *Chapman*." (*Wiley, supra*, 17 Cal.5th. at p. 1090.) "Instead, we must ask 'whether any rational fact finder could have come to the *opposite* conclusion.' A rational juror could have reached the opposite conclusion here based on the totality of Wiley's criminal conduct and the applicable sentences for those transgressions. Accordingly, we cannot conclude beyond a reasonable doubt that a properly instructed jury would have found Wiley's criminal convictions were of increasing seriousness." (*Ibid.*)

We reach a similar conclusion here. We are unable to conclude beyond a reasonable doubt that a properly-instructed jury would have found Gordon's juvenile adjudications were of increasing seriousness. A rational juror might altogether discount several of his earliest adjudications for vandalism, graffiti, possession of spray paint, and resisting a peace officer when it comes to assessing the numerosity and progression of Gordon's "criminality." The attempted robbery is similar to the current convictions. Whether it is more or less serious or the same level of seriousness may depend on the jurors' comparisons of the facts involved in each offense. A juror might deem the

18

carjacking offense a less serious offense of opportunity given the spontaneous startup of the Mercedes.  As the *Wiley* court held, "determination [of increasing seriousness] is a comparative and qualitative one.  These realities make it ' " 'difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.' " ' "  (*Wiley, supra*, 17 Cal.5th at p. 1090.)

Similarly, the trial court's finding that Gordon was a "leader" in orchestrating the offense because he gave orders to his robber companions is not cut and dried.  In a contested jury trial on this factor, Gordon may have presented live testimony that may have affected the jury's determination.  (See *Wiley, supra*, 17 Cal.5th at p. 1091.)  That he did not do so during the trial on the substantive charges does not mean that such evidence was not available.  Indeed, in all likelihood, the trial court reasonably would have ruled it inadmissible as the fact of "leadership" was not relevant to the underlying charges and *Wiley* had not yet been decided.

Finally, Gordon argues on appeal that because Welfare and Institutions Code section 203 states that "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose," prior juvenile adjudications can never be used in any way as aggravating factors to justify imposition of an upper term sentence.  In light of our disposition, this argument is moot.  Further the issue was neither raised nor briefed by Gordon below, so we do not have the benefit of the trial court's consideration and analysis of the issue and any further evidence that may be presented on remand.

## DISPOSITION

The judgments are reversed and remanded to the trial court with directions to convene resentencing hearings in accordance with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.

20